FILED
CLERK, U.S. DISTRICT COURT
8/10/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_JB\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CHARLES B. HENSLEY,<br><br>  Defendant. | CR 2:22-cr-00361-JLS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH ELEVEN

[18 U.S.C. § 1343]

A. INTRODUCTORY ALLEGATIONS

1. At times relevant to this Indictment:

   a. Defendant CHARLES B. HENSLEY was a resident of Redondo Beach, California. Defendant HENSLEY owned and operated Desilu Studios, Inc. ("DSI") and Migranade, Inc. ("Migranade") out of offices in Manhattan Beach, California, and other locations in the Central District of California.

   b. Desilu Production Inc. ("Desilu") was an American television production company founded by husband and wife Desi Arnaz

and Lucille Ball and known for the production of popular television shows such as "I Love Lucy," "Star Trek," and "Mission: Impossible." Desilu had no affiliation with DSI.

  c. CBS Studios Inc. ("CBS") was an American television production company. CBS was the rightful owner of the Desilu trademark.

  d. Company 1 was an animation company based in Los Angeles, California.

  e. Company 2 was an internet streaming service based in Tel Aviv, Israel, and publicly traded on the Tel Aviv Stock Exchange.

  f. Company 3 was a film and television post-production company based in Manhattan Beach, California.

  g. Company 4 was a development company based in the Coachella Valley, California.

  h. Defendant HENSLEY was the sole signatory on an account at Bank of America N.A. ending xx9276, held in the name of DSI at office space in Manhattan Beach, California (the "BOA x9276 account").

B. THE SCHEME TO DEFRAUD

  2. Beginning no later than in or about August 2017, and continuing through at least in or about May 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENSLEY, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud investors and owners and executives of companies targeted as part of the fraud, including Company 1, Company 2, Company 3, and Company 4 (the "target companies"), as to material matters, and to obtain money and property

from such investors, owners, and executives by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

3. The scheme to defraud operated, in substance, as follows:

a. Defendant HENSLEY pitched investments and induced others to pitch investments in companies represented to be affiliated with defendant HENSLEY (the "HENSLEY companies"), including DSI and Migranade, and offered to use stock in the HENSLEY companies to acquire at least some of the target companies. In at least some instances, defendant HENSLEY falsely and misleadingly represented that he was affiliated with the real Desilu and making new content using the Desilu name.

b. Defendant HENSLEY told investors and induced others to tell investors that he was the developer of the cold remedy Zicam, was extremely wealthy, and was backing the HENSLEY companies with his personal wealth. In fact, as defendant HENSLEY then knew, he was not extremely wealthy, had few assets, and was repeatedly bouncing checks and overdrawing bank accounts to get cash and pay expenses.

c. In at least some instances, defendant HENSLEY and others working at his direction provided investors and the owners and executives of the target companies with false and misleading valuation letters. The valuation letters purported to value DSI at more than $11 billion and Migranade at more than $50 million. In fact, as defendant HENSLEY then knew, the HENSLEY companies had few if any assets, and the valuation letters were false and misleading.

d. Defendant HENSLEY provided and induced others to provide investors and owners and executives of the target companies with misleading investor pitch presentations, executive summaries,

and other promotional materials that, among other false and misleading representations, claimed S.Ba. was the Chief Financial Officer ("CFO") for DSI. In fact, as defendant HENSLEY then knew, S.Ba. was not involved in DSI's operations or management, S.Ba. did not give anyone permission to use his name in offering materials or other documents, and S.Ba. was unaware his name was being used in this way.

      e. To induce investors to send money and to convince owners and executives of target companies to agree to acquisition proposals, defendant HENSLEY represented and induced others to represent that DSI was about to go public and that the stock was worth more than its face value and would increase in value following the initial public offering ("IPO"), which was imminent. In fact, as defendant HENSLEY then knew, representations regarding any public offering were misleading because DSI had few to no assets, no CFO, accountant, or auditor, no financial statements or any of the other requirements for an IPO, and the stock was not worth what was represented.

      f. Defendant HENSLEY represented and induced others to represent to investors and owners and executives of the target companies that the HENSLEY companies had already acquired valuable assets, including valuable intellectual property, distribution agreements, subsidiaries, and development rights, when in fact, as defendant HENSLEY then knew, the HENSLEY companies had not acquired the assets he said they had.

      g. Defendant HENSLEY represented and induced others to represent to investors and owners and executives of the target companies that the HENSLEY companies were actively developing

projects and otherwise in the process of bringing products and services to market, when in fact, as defendant HENSLEY then knew, the HENSLEY companies were not actively developing the projects or bringing the products and services to market that he said they were.

  h. Defendant HENSLEY and others working at his direction caused investors to send money to bank accounts defendant HENSLEY controlled, including by interstate wire transfer, and caused the owners and executives of at least some of the target companies to agree to transfer and to transfer ownership and control of the target companies to defendant HENSLEY based on false and misleading statements, which agreements and transfers were touted by defendant HENSLEY to give investors the misleading impression that the HENSLEY companies had acquired the target companies.

  i. Defendant HENSLEY falsely and misleadingly represented to investors that their investments would be used for business purposes only, when in fact defendant HENSLEY used investor money for his personal expenses, including expenses at a luxury resort and casino in Las Vegas, Nevada.

  j. To forestall and frustrate collection efforts and delay reports being made to authorities, defendant HENSLEY falsely and misleadingly represented to investors that the promised IPOs had merely been delayed and that investors could get refunds or convert their Migranade stock to DSI stock, and falsely and misleadingly represented to owners and executives of the target companies that money owed under acquisition and other agreements would be paid, notwithstanding that checks defendant HENSLEY had written were returned for nonpayment and other obligations he had promised to assume went unpaid.

C.  USE OF INTERSTATE WIRES

4.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant HENSLEY transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

| COUNT | DATE | INTERSTATE WIRING |
|---|---|---|
| ONE | 08/11/2017 | Transfer of approximately $40,000 via FedWire from an account at US Bank NA, held in the name of B.K. to the BOA x9276 account. |
| TWO | 08/14/2017 | Transfer of approximately $10,000, sent via FedWire from an account at MUFG Union Bank N.A., held in the name of B.K., to the BOA x9276 account. |
| THREE | 08/28/2017 | Transfer of approximately $46,000 sent via FedWire from an account at MUFG Union Bank N.A., held in the name of B.K., to the BOA x9276 account. |
| FOUR | 10/12/2017 | Transfer of approximately $10,000 sent via FedWire from an account at MUFG Union Bank N.A., held in the name of B.K., to the BOA x9276 account. |
| FIVE | 02/26/2018 | Transfer of approximately $40,000 sent via FedWire from an account at JPMorgan Chase Bank N.A., held in the names of T.B. and S.Bo., to the BOA x9276 account. |
| SIX | 03/01/2018 | Transfer of approximately $30,000, sent via FedWire from an account at JPMorgan Chase Bank N.A., held in the names of S.Bo. and A.B., to the BOA x9276 account. |
| SEVEN | 03/06/2018 | Transfer of approximately $30,000 via FedWire from an account at MUFG Union Bank, N.A., held in the name of B.K., to the BOA x9276 account |
| EIGHT | 03/22/2018 | Email from charlesbhensley@gmail.com to M.H., in response to questions about requirements for a Desilu investment, with text that read: "Hi [M.], No affiliation No |

| COUNT | DATE | INTERSTATE WIRING |
|---|---|---|
| | | notary necessarily [sic]. Have a great evening and I will see you tomorrow. Thanks Charles." |
| NINE | 03/29/2018 | Transfer of approximately $50,000 via FedWire from an account at Santander Bank N.A., held in the name of J.S., to the BOA x9276 account |
| TEN | 04/23/2018 | Transfer of approximately $40,000 via FedWire from an account at Bank of America, N.A, held in the name of S.N., to the BOA x9276 account |
| ELEVEN | 04/27/2018 | Transfer of approximately $35,000 via FedWire from an account at Bank of America, N.A, held in the name of S.N., to the BOA x9276 account |

COUNT TWELVE

[18 U.S.C. § 1028A(a)(1)]

5.   The Grand Jury realleges paragraphs 1 and 3 of this Indictment here.

6.   On or about March 22, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENSLEY, together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, without lawful authority, means of identification that defendant HENSLEY knew belonged to another person, namely, the name of S. Ba., during and in relation to the offense of Wire Fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in the Count Eight of this Indictment.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant CHARLES HENSLEY's conviction on the offenses set forth in any of Counts One through Twelve of this Indictment.

2. Defendant HENSLEY, if so convicted, shall forfeit to the United States of America the following:

  a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

  b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant HENSLEY, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant HENSLEY, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has

been commingled with other property that cannot be divided without difficulty.

                                        A TRUE BILL

                                        /S/
                                        Foreperson

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Major Frauds Section

KERRY L. QUINN
Assistant United States Attorney
Major Frauds Section